UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

---

EVERETT L. JOHNSON, SR.,

    Plaintiff,

    v.                                             Case No. 04-C-325

PEPSI COLA GENERAL BOTTLERS, INC.,
d/b/a PEPSIAMERICAS,

    Defendant.

---

**DECISION AND ORDER RE: DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

---

### I. BACKGROUND

This action was commenced on March 31, 2004, when the plaintiff, Everett L. Johnson ("Johnson" or "Mr. Johnson"), proceeding *pro se*, filed a complaint in the United States District Court for the Eastern District of Wisconsin alleging that his employment was terminated by his employer, Pepsi Cola General Bottlers, Inc. d/b/a PepsiAmericas ("Pepsi"), because of his race. He also claims that he was a victim of harassment.

Currently pending before the court is the defendant's motion for summary judgment, which is fully briefed and ready for resolution. Additionally, the movant has acted in accordance with Civil Local Rule 56.1(a)(1) and (2), involving summary judgment motions in *pro se* litigation. For the reasons which follow, the defendant's motion for summary judgment will be granted.

In accordance with the provisions of Civil Local Rule 56.2(a) (E.D. Wis.), the defendant's motion for summary judgment was accompanied by a set of proposed findings of fact. Civil Local Rule 56.2(b)(1) provides that:

(b) Response. Any materials in opposition to a motion filed under this rule must be filed within 30 days from service of the motion and must include:

(1) A specific response to the movant's proposed findings of fact, clearly delineating only those findings to which it is asserted that a genuine issue of material fact exists. The response must refer to the contested finding by paragraph number and must include specific citations to evidentiary materials in the record which support the claim that a dispute exists.

In turn, Civil Local Rule 56.2(e) provides:

(e) In deciding a motion for summary judgment, the Court must conclude that there is no genuine material issue as to any proposed finding of fact to which no response is set out.

In response to the defendants' motion for summary judgment, the plaintiff filed a document entitled "Defendant Notice of Motion and Motion for Summary Judgment."[1] On the third page of that document, the plaintiff purports to respond to the defendant's proposed findings of fact. The plaintiff objects to the defendant's proposed findings of fact in general by stating that "[t]he Defendants' [sic] Civil L.R. Proposed Findings of Fact are wrong." The plaintiff also claims that Defendant's Exhibits C, E, F, and G "are not true." Lastly, the plaintiff specifically challenges Defendant's Proposed Findings of Fact 16, 26, 33, 34, 35, 36, and 37. The plaintiff separately states that each of the above-listed facts "is not true." For each fact, the plaintiff states his version of the fact.

However, the plaintiff has not submitted his responses to the defendant's proposed findings of fact in the form of an affidavit. Federal Rule of Civil Procedure 56(e) states that "an adverse party may not rest upon the mere allegations or denials of the adverse party's pleading, but the adverse

---

[1] Johnson also filed a letter requesting this court to order the parties to mediation. Because the defendant has not responded favorably to Johnson's request, this court will not order mediation between the parties.

party's response, by affidavit or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e). By not submitting his responses in the form of an affidavit, the plaintiff has not complied with Rule 56(e).

In any event, even if the plaintiff's responses to the defendant's proposed findings of fact were submitted in the form of an affidavit, such responses (for the reasons set forth below) still would not be able to demonstrate that a genuine issue of material fact exists. Consequently, this court concludes that there is no genuine issue of material fact as to the defendant's proposed findings of fact. The undisputed material facts are as follows:

Everett L. Johnson is an adult who resides at 1826 W. Cherry Street, Milwaukee, Wisconsin, 53205. (Defendant's Proposed Finding of Fact ("DPFOF") ¶ 1.) Johnson's race is African American. (DPFOF ¶ 2.)

Pepsi Cola General Bottlers, Inc. d/b/a PepsiAmericas ("Pepsi"), operates a facility located at 5500 N. Lovers Lane Road, Milwaukee, Wisconsin, 53225. (DPFOF ¶ 3.)

Pepsi employed Johnson as a seasonal warehouse worker from August 25, 2002, to September 11, 2002, at the Lovers Lane warehouse. (DPFOF ¶ 4.)

Pepsi bottles, distributes, and sells Pepsi products in Wisconsin. (DPFOF ¶ 5.) Pepsi only operates a warehouse at 5500 N. Lovers Lane Road and does not perform bottling operations at that facility. (DPFOF ¶ 6.) Pepsi's warehouse at the Lovers Lane warehouse distributed Pepsi products in the four counties surrounding Milwaukee. (DPFOF ¶ 7.)

Pepsi employed approximately 50 to 55 permanent employees at the Lovers Lane warehouse at the time of Johnson's employment (DPFOF ¶ 8.) Of the total warehouse workers at Pepsi, approximately 60% to 75% are African American. (DPFOF ¶ 9.)

Approximately 20 employees worked on third shift at the Lovers Lane warehouse. (DPFOF ¶ 10.) Approximately 20 to 25 employees worked on second shift at the Lovers Lane warehouse. (DPFOF ¶ 11.) Approximately 10 employees worked on first shift at the Lovers Lane warehouse. (DPFOF ¶ 12.)

Pepsi's permanent warehouse workers are members of the Teamsters Union, Local 344 and are subject to a collective bargaining agreement. (DPFOF ¶ 13.)

Under the collective bargaining agreement, Pepsi is allowed to hire seasonal warehouse workers between April and September. (DPFOF ¶ 14.) Seasonal warehouse workers cannot be employed by Pepsi past the last Saturday in September pursuant to the collective bargaining agreement. (DPFOF ¶ 16.)

Seasonal warehouse workers do not join the union. (DPFOF ¶ 15.) Johnson was not a member of a labor union. (DPFOF ¶ 18.)

During his employment at Pepsi, Johnson worked on the third shift and was supervised by Charlie Miller ("Miller" or "Mr. Miller"), Pepsi's Third Shift Warehouse Supervisor. (DPFOF ¶ 17.)

The primary duties of a warehouse worker at Pepsi entail reviewing job orders so that the individual can pull the proper product from the shelves. The assorted product is then compiled on a pallet and ultimately loaded onto a delivery truck. (DPFOF ¶ 19.)

Steve Scholfield ("Scholfield" or "Mr. Scholfield") worked at Pepsi for at least the last 20 years as a warehouse worker. (DPFOF ¶ 20.) Scholfield was a co-worker of Johnson's at Pepsi. (DPFOF ¶ 24.) Scholfield was a member of the Teamsters Union, Local 344. (DPFOF ¶ 21.)

Union members are protected by a just cause standard with respect to any discipline or discharged decision by Pepsi. (DPFOF ¶ 22.)

4

Scholfield's race is Caucasian. (DPFOF ¶ 23.)

While employed at Pepsi, Johnson never experienced any statements made to him that he felt were motivated by race. (DPFOF ¶ 25.)

Johnson's claim of race discrimination at Pepsi consists solely of two incidents. The first incident occurred on August 26, 2002, and the second occurred on September 11, 2002. (DPFOF ¶ 26.)

Johnson contends that on August 26, 2002, Scholfield picked up his job orders, and when Johnson attempted to say something to Scholfield, Scholfield put his hand up towards Johnson's face, and he then threw the job orders down and drove off on his forklift. (DPFOF ¶ 27.)

Scholfield informed Miller that he had laryngitis at the start of the shift on August 26, 2002, and had lost his voice. (DPFOF ¶ 28.)

On September 11, 2002, Scholfield, with his forklift, set a pallet down in an aisle that Johnson was working in. The pallet blocked Johnson from ready access to the pallet he was working on. Although the pallet was dropped off using a forklift, it could have been moved by hand. (DPFOF ¶ 29.)

Due to the distribution operations at the Lovers Lane warehouse, it would have been common for Scholfield to set a pallet in a location that may have impeded into Johnson's work area. (DPFOF ¶ 30.)

The distribution operations at the Lovers Lane warehouse operated at a fast pace with tight deadlines. Due to constrained space, forklift drivers were required to operate near other employees. (DPFOF ¶ 31.)

5

On September 11, 2002, Johnson asked Scholfield to move the pallet. Scholfield responded that Johnson should move it by hand. (DPFOF ¶ 32.)

On September 11, 2002, instead of moving the pallet by hand, Johnson sought out his supervisor, Miller. (DPFOF ¶ 33.) On September 11, 2002, as they walked to Johnson's work area, Johnson told Miller that he had had enough of Steve Scholfield. (DPFOF ¶ 34.) Miller perceived Johnson's attitude and demeanor to be agitated. (DPFOF ¶ 35.)

While Johnson and Miller were at Johnson's work area, Scholfield yelled out that Johnson was a crybaby because he had gone to get his supervisor. (DPFOF ¶ 36.) After the "crybaby" comment by Steve Scholfield, Johnson remarked to Miller that he had had it and began making strides toward Steve Scholfield. (DPFOF ¶ 37.)

Miller believed that Johnson was going to initiate a physical altercation with Scholfield and told Johnson that he should punch out and go home, which he did. (DPFOF ¶ 38.)

Miller decided that Johnson's employment at Pepsi should be terminated because he believed that Johnson was going to initiate a physical altercation with Scholfield in violation of Pepsi's rules. (DPFOF ¶ 39.) Miller recommended to his manager that Johnson's employment at Pepsi be terminated. (DPFOF ¶ 40.)

Johnson's employment at Pepsi was terminated effective September 11, 2002. (DPFOF ¶ 41.)

On September 13, 2002, Johnson filed an administrative complaint with the Wisconsin Equal Rights Division alleging race discrimination. The Wisconsin Equal Rights Division cross-filed the complaint with the Equal Employment Opportunity Commission ("EEOC"). (DPFOF ¶ 42.)

On February 11, 2003, the Wisconsin Equal Rights Division determined that there was no probable cause to believe that Johnson experienced race discrimination at Pepsi. (DPFOF ¶ 43.)

On July 28, 2003, a hearing was held in front of Administrative Law Judge Allen Lawent ("ALJ Lawent") (spelled incorrectly on the transcript as Alan Melent) from the Wisconsin Equal Rights Division, which was tape-recorded and transcribed by an experienced secretarial transcriber. (DPFOF ¶ 44.)

Johnson presented testimony at the hearing, cross-examined witnesses, and made an opening and closing statement. (DPFOF ¶ 45.)

On October 20, 2003, ALJ Lawent decided that Johnson had not proven that probable cause existed to believe that Pepsi engaged in race discrimination with respect to his employment and termination. (DPFOF ¶ 46.)

On January 2, 2004, the EEOC issued Johnson a Right to Sue letter. (DPFOF ¶ 47.) On March 31, 2004, Johnson commenced the present action. (DPFOF ¶ 48.)

## II. ANALYSIS

### A. Summary Judgment Standard

A district court must grant summary judgment "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c).

The purpose of summary judgment is to "pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)) (quoting Fed. R. Civ. P. 56(e) advisory committee's note to 1963

7

amendment). "Summary Judgment is not appropriate 'if the evidence is such that a reasonable jury could return a verdict for the nonmoving party'" *Payne v. Pauley*, 337 F.3d 767, 770 (7th Cir. 2003) (quoting *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986)).

"[A] party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). A party opposing a properly supported summary judgment motion "may not rest upon the mere allegations or denials of the adverse party's pleading" but rather must introduce affidavits or other evidence to "set forth specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e); *see also Outlaw v. Newkirk*, 259 F.3d 833, 837 (7th Cir. 2001). To state it differently, "[a] party will be successful in opposing summary judgment only when they present definite, competent evidence to rebut the motion." *EEOC v. Sears, Roebuck & Co.,* 233 F.3d 432, 437 (7th Cir. 2000) (quoting *Smith v. Severn*, 129 F.3d 419, 427 (7th Cir. 1997)) (internal quotation marks omitted).

To determine whether a genuine issue of material fact exists, the court must review the record, construing all facts in the light most favorable to the nonmoving party and drawing all reasonable inferences in that party's favor. *See Heft v. Moore*, 351 F.3d 278, 282 (7th Cir. 2003) (quoting *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 255 (1986)). "'In the light most favorable' simply means that summary judgment is not appropriate if the court must make 'a choice of inferences.'" *Draghi v. County of Cook*, 184 F.3d 689, 691 (7th Cir. 1999) (quoting *Smith*, 129 F.3d at 425). "The evidence must create more than '"some metaphysical doubt as to the material facts."'"

8

*See Albiero v. City of Kankakee*, 246 F.3d 927, 932 (7th Cir. 2001) (quoting *Johnson v. University of Wisconsin-Eau Claire*, 70 F.3d 469, 477 (7th Cir. 1995) (quoting *Matsushita Elec. Indus. Corp., v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986))). A mere scintilla of evidence in support of the nonmovant's position is insufficient. *See id.* (quoting *Liberty Lobby*, 477 U.S. at 252).

Thus, "the plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex*, 477 U.S. at 322.

**B. The Racial Discrimination Claims Pursuant to Title VII and § 1981**

The plaintiff, proceeding *pro se*, did not specify which statute (or statutes) on which he bases his racial discrimination claim. The defendant assumes that the plaintiff's claim is based on both Title VII of the Civil Rights Act of 1964, codified as 42 U.S.C. § 2000e et seq. ("Title VII'), and 42 U.S.C. § 1981. (Def.'s Br. at 6.) Because the plaintiff already unsuccessfully pursued his racial discrimination claim with the Wisconsin Equal Rights Division, and has now filed a claim in federal court, this court will also assume that the plaintiff's claim is based on Title VII and § 1981.

To prevail on a disparate treatment claim under Title VII, a plaintiff must establish that he is the victim of intentional discrimination. *See Jackson v. E.J. Brach Corp.*, 176 F.3d 971, 982 (7th Cir. 1999). A plaintiff can establish discrimination at the summary judgment stage using either the direct or the indirect method of proof. *Oest v. Illinois Dep't of Corr.*, 240 F.3d 605, 611-12 (7th Cir. 2001). Using the direct approach, a plaintiff can establish discrimination "by putting in enough evidence, whether direct or, more commonly, circumstantial, to create a triable issue of whether the adverse employment action . . . had a discriminatory motivation." *Wallace v. SMC Pneumatics, Inc.*,

9

103 F.3d 1394, 1397 (7th Cir. 1997) (internal citation omitted). Under the more common indirect method, a plaintiff can establish discrimination by prevailing under the burden-shifting analysis set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). *Oest*, 240 F.3d at 612.

Title 42 U.S.C. § 1981 guarantees to "[a]ll persons . . the same right . . . to make and enforce contracts . . . as is enjoyed by white citizens."[2] Section 1981 prohibits racial discrimination as to all contracts, including employment contracts. This prohibition on discrimination applies to "'all phases and incidents of the contractual relationship,'" including discrimination in the making of contracts and in the termination of contracts. *Reddy v. Good Samaritan Hosp. and Health Center*, 137 F. Supp. 2d 948, 961 (S.D. Ohio 2000) (quoting *Rivers v. Roadway Exp., Inc.*, 511 U.S. 298, 302 (1994)).

The standards for proving discrimination under § 1981 are identical to the standards for proving discrimination under Title VII. *See Gonzalez v. Ingersoll Milling Machine Co.*, 133 F.3d 1025, 1035 (7th Cir. 1998). Furthermore, as under Title VII, a plaintiff bringing suit under § 1981 can meet his burden of proof either directly or through the indirect, burden-shifting method. *See Von Zuckerstein v. Argonne Nat'l Lab.*, 984 F.2d 1467, 1472 (7th Cir. 1993). A prima facie case of race discrimination under § 1981 is predicated on the same elements as a race discrimination claim under Title VII. *See Lalvani v. Cook County*, 269 F.3d 785, 788 (7th Cir. 2001).

---

[2] In full, 42 U.S.C. § 1981 states:

All persons within the jurisdiction fo the United States shall have the same right in every State and Territory to make and enforce contracts, to sue, be parties, give evidence, and to the full and equal benefit of all laws and proceedings for the security of persons and property as is enjoyed by white citizens, and shall be subject to like punishment, pains, penalties, taxes, licenses, and exactions of every kind, and to no other.

10

The plaintiff has not presented any direct evidence of discrimination. "Direct evidence essentially requires an admission by the decision-maker that his actions were based on the prohibited animus." *Radue v. Kimberly-Clark Corp.*, 219 F.3d 612, 616 (7th Cir. 2000). The two incidents which form the basis of the plaintiff's claim in no way expose racial animus on a part of the defendant. Therefore, Johnson's claims will be examined under the indirect method of proof.

To succeed in establishing a claim of race discrimination in a Title VII action using the indirect method of proof, a plaintiff must first establish a prima facie case by showing: (1) that he was a member of a protected class; (2) that he was meeting his employer's legitimate business expectations; (3) that he suffered an adverse employment action; and (4) that the employer treated similarly situated employees outside of the protected class more favorably. *Fuka v. Thomson Consumer Elecs.*, 82 F.3d 1397, 1404 (7th Cir. 1996); *EEOC v. Our Lady of the Resurrection Med. Ctr.*, 77 F.3d 145, 148-49 (7th Cir. 1996). If a plaintiff fails to establish any element of the prima facie case, the defendant is entitled to summary judgment without the court reaching the other two steps of the *McDonnell Douglas* analysis. *Oest*, 240 F.3d at 612. If the plaintiff establishes a prima facie case, however, the burden of production then shifts to the defendant to articulate a legitimate, nondiscriminatory reason for the adverse employment action. *See Dunn v. Nordstrom, Inc.*, 260 F.3d 778, 784 (7th Cir. 2001). Once the defendant articulates a legitimate, nondiscriminatory reason, the burden shifts back to the plaintiff to establish that the defendant's articulated reason is a pretext for discrimination. *Id.* At all times, the plaintiff carries the burden of persuading the finder of fact that the employer intentionally discriminated against the plaintiff on the basis of the plaintiff's protected status. *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 507-508 (1993).

For the purposes of its motion for summary judgment, the defendant only contests the fourth element of the prima facie case. The defendant does not dispute that Johnson is a member of a protected class, that he was meeting Pepsi's legitimate business expectations, and that he suffered an adverse employment action. (Def.'s Br. at 8.) The defendant does contend that Johnson cannot prove that Pepsi treated similarly situated employees outside of the protected class more favorably. (Def.'s Br. at 8.) Because the defendant only disputes the fourth element, this court will also assume (for the purpose of this decision) that the plaintiff is able to prove the other three elements.

The defendant contends that Mr. Johnson cannot identify an individual outside his protected class that was treated more favorably than Mr. Johnson. (Def.'s Br. at 8-10.) Indeed, the plaintiff has not offered any such evidence. The only employee who is relevant to this analysis is Mr. Scholfield, the employee who was the subject of Mr. Johnson's complaints. And, the defendant argues that Scholfield is not similarly situated to the plaintiff. First, the defendant argues that, with respect to the September 11, 2002 incident, Mr. Johnson was the aggressor, as opposed to Mr. Scholfield. (Def.'s Br. at 9.) Second, Mr. Scholfield was a union member, whereas Mr. Johnson was not. (Def.'s Br. at 9-10.) Third, Mr. Scholfield had worked at Pepsi for much longer than Mr. Johnson – Scholfield had worked at Pepsi for twenty years, while Johnson had worked there for only two weeks. (Def.'s Br. at 10.)

I agree with the defendant's contention that Johnson and Scholfield were not similarly situated. To show that another employee is similarly situated, the plaintiff must show that another employee is "directly comparable to [him] in all material respects." *Patterson v. Avery Dennison Corp.*, 281 F.3d 676, 680 (7th Cir. 2002); *see also Radue*, 219 F.3d at 618 ("[A]n employee need not show complete identity in comparing himself to the better treated employee, but he must show

12

substantial similarity."). In deciding whether an employee is similarly situated, the court must look at "'all relevant factors, the number of which depends on the context of the case.'" *Patterson*, 281 F.3d at 680 (quoting *Radue*, 219 F.3d at 617). Typical factors include experience, education, and qualifications of the two employees. *Id.* However, other factors include whether the two employees had the same supervisor, whether one employee was subordinate to the other, whether the two employees held the same or similar positions, and whether the two employees were subject to the same standards. *Id.* Of course, the factors that are considered in this determination must be relevant to the personnel decision in question. *Id.*

Simply stated, Mr. Scholfield is not comparable to Mr. Johnson in all material respects. Although Mr. Scholfield and Mr. Johnson may have had the same supervisor and did the same type of work, Mr. Scholfield was subject to very different standards than Mr. Johnson. Mr. Scholfield was a union member. Therefore, he was protected by a just cause standard for discharge. Johnson, on the other hand, was not a union member and was not protected by a just cause standard. Where one employee is a union member, and the other is not, the two employees are not similarly situated for the purposes of satisfying the fourth element of a plaintiff's prima facie case. *See Sutherland v. Norfolk S. Ry. Co.*, 2002 WL 1827630, at *4 (union member employee seeking promotion to non-union position was not similarly situated to non-union candidates for the position).

Mr. Johnson and Mr. Scholfield also had different levels of experience with Pepsi and different positions within the warehouse. Mr. Scholfield had been working at Pepsi for at least twenty years and was a permanent employee. Mr. Johnson, on the other hand, had only been working at Pepsi for two weeks and was temporary, seasonal worker. Therefore, even though Johnson and Scholfield may have performed the same work within the warehouse, their positions were not similar.

13

Lastly, Mr. Scholfield and Mr. Johnson were not similarly situated because the two engaged in dissimilar conduct. As the defendant points out, Mr. Miller believed Johnson was the aggressor in the September 11, 2002 incident. Therefore, Pepsi was justified in treating the two employees differently.

Because the plaintiff has failed to show that Pepsi treated any similarly situated employees outside of the protected class more favorably than he was treated, he has failed to make out a prima facie case of racial discrimination. This alone demonstrates that there is no genuine issue of material fact as to the plaintiff's race discrimination claim. However, even if the plaintiff was able to make out a prima facie case of discrimination, he cannot establish that Pepsi's reason for discharge was a pretext for discrimination.

If the plaintiff were to establish a prima facie case of discrimination, the burden would then shift to Pepsi to articulate legitimate, non-discriminatory reasons for the plaintiff's discharge. Pepsi contends that its legitimate, non-discriminatory reason for discharging Johnson was that Johnson initiated a physical altercation on September 11, 2002. (Def.'s Br. at 10.) Thus, in order to survive summary judgment, the plaintiff would have to establish that Pepsi's reason for discharge was a pretext for discrimination.

In order to establish pretext, a plaintiff can use either direct proof that the employer was more likely than not motivated by a discriminatory reason or indirect proof using evidence that the employer's explanation is not credible. *Wade v. Lerner New York*, 243 F.3d 319, 323 (7th Cir. 2001). Pretext "means a dishonest explanation, a lie rather than an oddity or an error." *Kulumani v. Blue Cross, Blue Shield Ass'n*, 224 F.3d 681, 685 (7th Cir. 2000). "On the issue of pretext, our only concern is the honesty of the employer's explanation." *O'Connor v. DePaul University*, 123

14

F.3d 665, 671 (7th Cir. 1997). At all times, the plaintiff carries the burden of persuading the finder of fact that the employer intentionally discriminated against the plaintiff on the basis of the plaintiff's protected status. *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. at 507-508.

The plaintiff has not offered any evidence that Pepsi's reason for discharge was a pretext for discrimination. Even assuming the plaintiff's version of the story is true, i.e., that he did not intend to initiate a physical altercation with Mr. Scholfield, that is not enough to establish that Pepsi's proffered reason for termination is a lie. It is not sufficient to prove that the reason was doubtful or mistaken. *Crim v. Bd. of Educ. of Cairo Sch. Dist. No. 1*, 147 F.3d 535, 541 (7th Cir. 1998). Even if the defendant's reason for discharging Johnson was mistaken, ill considered, or foolish, if the defendants honestly believed in the reason then pretext has not been proven. *See id.*

Because Johnson cannot establish a prima facie case of discrimination, and cannot establish that Pepsi's legitimate, non-discriminatory reason for discharging Johnson was a pretext for discrimination, there is no genuine issue of material fact as to Johnson's Title VII and § 1981 race discrimination claims.

There is one final point. The defendant also contends that the plaintiff's § 1981 claim fails for a second reason – that the § 1981 claim is barred by the doctrine of issue preclusion. (*See* Def.'s Br. at 11-14.) As discussed above, however, the plaintiff has failed to make out a prima facie case of discrimination and has failed to prove pretext. Thus, granting summary judgment is appropriate on this basis alone. Such being the case, I will not address the defendant's claim preclusion argument.

## C. The Racial Harassment Claim

Once again, the plaintiff did not specify the basis for his harassment claim. Johnson indicated, in his state administrative charge, that he was also pursuing a racial harassment claim. (Def.'s Br. at 14.) Therefore, the defendant assumes that the plaintiff's action in this court also includes a racial harassment claim. (Def.'s Br. at 14.) This court will assume the same.

Title VII[3] makes it unlawful for an employer "to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms or privileges of employment, because of such individual's race." 42 U.S.C. § 2000e-2(a)(1). Thus, an employer "may be liable for discrimination within the meaning of Title VII if an employee is subjected to a hostile work environment based on his race." *Beamon v. Marshall & Ilsley Trust Co.*, Nos. 04-1521 & 04-2263, slip op. at 14 (7th Cir. June 15, 2005). In order to survive summary judgment on a hostile work environment claim, the plaintiff must show: "(1) he was subject to unwelcome harassment; (2) the harassment was based on his race; (3) the harassment was severe or pervasive so as to alter the conditions of the employee's work environment by creating a hostile or abusive situation; and (4) there is a basis for liability." *Williams v. Waste Mgmt. of Ill.*, 361 F.3d 1021, (7th Cir. 2004) (citing *Mason v. S. Ill. Univ. at Carbondale*, 233 F.3d 1036, 1043 (7th Cir. 2000)).

For the purposes of its motion for summary judgment, Pepsi does not dispute the fourth element, that there is a basis for employer liability. (Def.'s Br. at 15.) Pepsi does, however, contend that Johnson cannot establish the other three elements to survive summary judgment on his hostile

---

[3] Because § 1981 racial harassment claims are evaluated using the same standards as Title VII racial harassment claims, this court will not address them separately. *See Herron v. DaimlerChrysler Corp.*, 388 F.3d 293, 299 (7th Cir. 2004).

16

work environment claim. Pepsi argues that Johnson's allegations do not rise to the level of harassment, that the alleged incidents were not based on race, and that the alleged incidents were not severe or pervasive enough to create a hostile or abusive working environment. (Def.'s Br. at 14-17.)

Under Johnson's version of the September 11, 2002 incident, Mr. Scholfield directed profane language at Johnson and Mr. Miller laughed at Johnson when he complained to Miller about the incident. (Pl.'s Notice of Mot. & Mot. for Summ. J. at [unpaginated] 3.) The other relevant facts from this incident are that Mr. Scholfield placed a pallet in an aisle that blocked Johnson's work area, and that Mr. Scholfield called Johnson a "crybaby." The second incident that makes up Johnson's claim occurred on August 26, 2002, when Mr. Scholfield looked through Johnson's job orders, put his hand up to stop Mr. Johnson from speaking, and then tossed the orders back on the pallet. (*See* Def.'s Br. at 15.) The last incident that makes up Johnson's harassment claim is his generic claim that forklift drivers drove too close to him. (*See* Def.'s Br. at 15.)

For the purposes of this decision, this court will assume arguendo that the incidents Johnson complains of satisfy the first element, i.e., that Johnson was subject to unwelcome harassment.

Assuming that Johnson's recitation of the facts is true[4] and that such recitation shows unwelcome harassment, Johnson still cannot satisfy the second element of his harassment claim.

Johnson must establish that the alleged harassment was based on his race, which means that he must show a connection between the alleged incidents and his race. *See Herron v. DaimlerChrysler Corp.*, 388 F.3d 293 (7th Cir. 2004). That is, Johnson must show that the incidents were "'inherently racial,' that they evidenced 'negative attitudes toward African-Americans,' or that

---

[4] Johnson tells a slightly different story than the defendant, with respect to one of the incidents that make up his discrimination claim. However, because Johnson did not submit his responses in the form of an affidavit, this court has concluded that there is no genuine issue of material fact as to any of the defendants' proposed findings of fact.

Mr. Johnson's version of the September 11, 2002 incident involving Steve Scholfield is as follows:

> 7. . . . Mr. [S]cholfield told me (Everett Johnson) that I had hands, to move it (the pallet) my fucking self that he had work to do.
>
> 8. . . . I told Mr. Miller that Mr. Scholfield is not worth me losing my job and that [I] like working for Pepsi and that [I] had a family to take care of.
>
> 9. . . . My attitude and demeanor never changed while [I] was talking to Mr. Miller or while we were walking towards the pallet to show him where Mr. Scholfield had drop[ped] the pallet to block the walk way so that [I] couldn't get by with my pallet to take the drop off spot to be loaded onto the tr[uc]ks.
>
> 10. . . . Mr. Scholfield [sic] true remark was "[y]ou want me to bring you some fucking tissue you big ass cry baby, you went and got the supervisor."
>
> 11. . . . After Mr. Scholfield state that I (Everett Johnson) told Mr. Miller that something had to be done because I cannot keepworking [sic] like this[,] Mr. Miller began laughing and I said Charlie this is not funny. Mr. Miller never stopped laughing until I asked Mr. Scholfield to come here. At that point and time Mr. Miller replied that [I] got what [I] wanted and that [I] was fired.

(Pl.'s Notice of Mot. & Mot. for Summ. J. at [unpaginated] 3.)

18

they had 'racial . . overtones.'" *Beamon*, Nos. 04-1521 & 04-2263, slip op. at 14 (quoting *Hardin v. S.C. Johnson & Son, Inc.*, 167 F.3d 340, 345-46 (7th Cir. 1999)). Harassment need not be explicitly racial. However, it must be "'sufficiently connected to race' before it may reasonably be construed as being motivated by the defendant's hostility to the plaintiff's race." *Id.* at 15. (quoting, et al., *Luckie v. Ameritech Corp.*, 389 F.3d 708, 713 (7th Cir. 2004)).

The incidents Johnson complains of make up (if at all) "general harassment," which is not actionable under Title VII or § 1981. *See Chapa v. Village of Glenwood*, 2001 WL 946454, at *4 (N.D. Ill. Aug. 20, 2001); *Miller v. CCC Info. Sys., Inc.*, 1996 WL 480370, at *3 (N.D. Ill. Aug. 22, 1996). I do not doubt that Mr. Johnson considers the above-described incidents to be harassment. Indeed, Mr. Johnson was likely inconvenienced and insulted by having his work orders thrown in his face, by having his work area blocked, by being called a "crybaby," by being laughed at by his supervisor, and by having profane language directed at him. However, Johnson has not shown that the incidents were in any way connected to his race. None of the language directed at him had a racial component, nor can it be argued that any of the incidents were implicitly related to his race. Indeed, not every perceived insult or "unfairness in the workplace may be ascribed to discriminatory motivation merely because the complaining employee belongs to a racial minority." *Beamon*, Nos. 04-1521 & 04-2263, slip op. at 14-15; *see also Herron*, 388 F.3d at 303 ("The fact that [the plaintiff] is a member of a protected class does not transform [his problems at work].").

Because the incidents complained of by the plaintiff lack any discernable connection to race, I need not address whether the incidents were severe or pervasive enough to create a hostile and abusive working environment. Simply stated, because Johnson has not produced sufficient evidence

19

to satisfy the second element of a racial harassment claim, the defendant's motion for summary judgment must be granted.

## IV.  CONCLUSION AND ORDER

For the above-stated reasons, it is my conclusion that there is no genuine issue of material fact as to plaintiff's racial discrimination and racial harassment claims, and that the defendant is entitled to judgment as a matter of law.  Consequently, the defendant's motion for summary judgment will be granted.

**NOW THEREFORE IT IS ORDERED** that the defendant's motion for summary judgment be and hereby is **GRANTED**.

**IT IS FURTHER ORDERED** that this action be and hereby is **DISMISSED**;

**IT IS FURTHER ORDERED** that the Clerk of Court enter judgment accordingly.

**SO ORDERED** this  6th  day of July 2005, at Milwaukee, Wisconsin.

s/ William E. Callahan, Jr.
WILLIAM E. CALLAHAN, JR.
United States Magistrate Judge